EXHIBIT A

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
ELISA PINEDA (SBN 328285)
*elisa@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/17/2021** at 10:13:01 AM

Clerk of the Superior Court
By Bernabe Montijo, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

| | |
|---|---|
| PAMELA DEANS, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>VIRGIN SCENT, INC. DBA ARTNATURALS, a California corporation, and DOES 1-100, inclusive,<br><br>               Defendants. | Case No. 37-2021-00048846-CU-BC-CTL<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**<br><br>1. **Breach of Express Warranty**<br>2. **Breach of Implied Warranty**<br>3. **Restitution, Common Counts, Unjust Enrichment, Quasi-Contract and/or Assumpsit**<br>4. **Fraud and Deceit**<br>5. **Intentional Misrepresentation**<br>6. **Negligent Misrepresentation**<br>7. **California's Consumers Legal Remedies Act**<br>8. **California's False Advertising Law**<br>9. **California's Unfair Competition Law**<br><br>**JURY TRIAL DEMANDED** |

EXHIBIT A

Plaintiff Pamela Deans ("Plaintiff"), individually and on behalf of all others similarly situated and the general public, by and through undersigned counsel, hereby brings this Class Action Complaint against Virgin Scent, Inc. dba Artnaturals ("Defendant" or "Artnaturals") to, without limitation, obtain actual and exemplary damages, injunctive relief, restitution, and obtain a declaration that Defendant's actions were unlawful as further set forth below. Plaintiff alleges the following based upon personal knowledge as to herself and his own acts, and on information and belief as to all other matters, including, *inter alia*, any investigation conducted by and through his attorneys.

## I.    Nature of the Action

1.    This is a consumer class action for violations of state consumer protection and public safety laws. This action seeks to remedy Defendant's deceptive business practice and restore to consumers money that was fraudulently obtained from them. This action further seeks to compensate consumers for personal and bodily injuries that they may have suffered, are suffering, or will suffer as result of using Defendant's Products.

2.    Artnaturals manufactures, advertises, markets, distributes, and sells scent free gel hand sanitizers (hereinafter referred to as the "Products") online and in major retail stores such as Target, Wal-Mart, Sam's Club throughout the United States. The company bills itself on its website as a company "born out of a desire to free beauty from high prices, toxic chemical and all-around bad vibes." A true and correct copy of its About Us page on its website is provided below:



Class Action Complaint

EXHIBIT A

3.      Artnaturals holds its Products out as being all "natural." Its website touts its Products as being "CHEMICAL FREE" and states that it uses "only nourishing, natural ingredients to boost your beauty with no preservatives, parabens, or phthalates to drag you down." A true and correct copy of its "CHEMICAL FREE" statement taken from Artnaturals' website is provided below:



4.      Artnaturals likewise advertises, markets, and sells its Products with labeling and advertising claims that its Products are "natural" when in fact all of its Products contain dangerously high levels of a chemical impurity known as benzene. A true and correct copy of the front label of Defendant's Products is provided below:

3

Class Action Complaint

EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18      5.      In response to the surge in demand for hand sanitizer products during the COVID-

19  19 pandemic, the Federal Drug and Food Administration ("FDA") temporarily changed its policy

20  for hand sanitizer products, which the FDA regulates as a type of over-the-counter drug.

21      6.      With the surge in sales propelling non-name brand hand sanitizer manufacturers to

22  the top of consumer demand lists as name-brand hand sanitizer products disappeared from retail

23  stores, Defendant along with other hand sanitizer manufacturers, sought to take advantage of the

24  crisis. Many manufacturers of hand sanitizer products began to cut corners in efforts to monetize

25  from the pandemic. Shortly after the pandemic began in the U.S., for instance, dozens of hand

26
27
28

Class Action Complaint

EXHIBIT A

sanitizer products were recalled by the FDA after they were found to contain methanol contamination, which causes blindness, neurological damage, and even death.[1]

7.     During the pandemic, hand sanitizers became a widely recommended product for the prevention of spread of COVID-19. As such, hand sanitizer products are regularly used by adults and children in large volumes. It is vital that such products abide by state and federal law and guidelines.

8.     Defendant's Products contain illegal and undisclosed amounts of benzene, a carcinogenic chemical product impurity that has been linked to leukemia and other cancers.

9.     Despite the FDA's temporary change in policy, the Products are not designed to contain benzene, and in fact no amount of benzene is acceptable in gel hand sanitizer products such as the one manufactured by Defendant. The presence of benzene in the Products render it unsafe and worthless. Further, the presence of benzene in the Products render it adulterated and misbranded. As a result, the Products are illegal to sell under federal and state law.

10.     Plaintiff, who was deceived by Defendant's unlawful conduct and purchased the Products at retails stores in California, brings this action on behalf of herself and the proposed Class to remedy Defendant's unlawful and unfair acts.

11.     Plaintiff and members of the proposed Class were injured in fact and lost money or property in terms of the full purchase price of the Products. As the Products expose consumers to benzene well above any permissible limit (which in this case is zero), the Products are not fit for ordinary reasonably foreseeable use by humans. Defendant's Products were unmerchantable because it contained dangerous levels of benzene, and were therefore adulterated, misbranded, and illegal to sell in the United States.

12.     Plaintiff and Class Members did not know, and had no reason to know, that Defendant's hand sanitizer Products were adulterated and misbranded. Plaintiff would not have purchased Defendant's hand sanitizer Products at all but for Defendant's material

---

[1] Carlie Porterfield, *Companies That Rushed To Make Hand Sanitizer For Pandemic Will Now Have To Conform to FDA Guidelines*, FORBES, Oct. 12, 2021, https://www.forbes.com/sites/carlieporterfield/2021/10/12/companies-that-rushed-to-make-hand-sanitizer-for-pandemic-will-now-have-to-conform-to-fda-guidelines/?sh=3c0448693d99.

Class Action Complaint

EXHIBIT A

misrepresentations and omissions, or if she had been told of the actual or potential presence of benzene in these hand sanitizer Products and/or that it was not legal to receive or sell such Products under federal and state law. Plaintiff and members of the Class who purchased Defendant's Products were overcharged because by law the Products were worthless. Plaintiff and Class members reviewed the labels, advertising, and/or marketing of Defendant's hand sanitizer Products, reasonably acted in positive response to those representations and omitted material facts and were thereby deceived.

13.    In addition, as a result of using these Products, Plaintiff and Class Members have been exposed to a product that resulted in or could result in Plaintiff and Class Members sustaining bodily injury, sickness or disease resulting from continuous or repeated use of the Products and subsequent exposures based on such repeated use of the same harmful Products distributed by Defendant or may suffer personal and bodily injury in the future as a result of such exposures. Thus, Plaintiff seeks on behalf of herself and the putative Class Members, not only the cost of the Products but also damages for any actual or potential bodily or personal injuries they suffered or may have suffered or may suffer in the future based on the use of such Products and the resulting exposure, and/or for medical monitoring.

14.    On behalf of the putative Class, as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*, (1) cease packaging, distributing, and advertising and selling the Products in violation of the U.S. FDA regulations and state consumer protection laws; (2) re-label or recall all existing deceptively packaged Products; (3) conduct a corrective advertising campaign to inform consumers about the deceptive advertising; (4) award Plaintiff and members of the Class restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, interest, and attorneys' fees.

15.    On behalf of the putative Class, as defined herein, Plaintiff asserts the following causes of action against Defendant: (1) breach of express warranty; (2) breach of implied warranty; (3) Restitution, Common Counts, Unjust Enrichment, Quasi-Contract and/or Assumpsit; (4) Fraud and Deceit; (5) Intentional Misrepresentation; (6) Negligent Misrepresentation; (7) violations of

Class Action Complaint

EXHIBIT A

California's Consumers Legal Remedies Act; (8) violations of California's False Advertising Law; and (9) violations of California's Unfair Competition Law.

## II.    Parties

16.    Plaintiff is a citizen of California and resides in San Bernardino County. Plaintiff purchased the Products online from retail stores such as Target, Wal-Mart, and BeallsFlorida.

17.    Defendant Virgin Scent, Inc. dba Artnaturals is a corporation incorporated in the state of California with a principal place of business at 16325 South Avalon Boulevard, Gardena, California 90248. Defendant conducts substantial business throughout the United States with its manufacturing, shipping, advertising, and promotion of the Products taking place in California and emanating from this State to throughout the United States.

18.    The true names and capacities of Defendants sued as Does 1 through 100 are unknown to Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 100 when ascertained. Plaintiff is informed and believe, and thereupon allege, that each of the Doe Defendants, jointly and severally, are in some manner responsible for the damages alleged herein. Any reference to "Defendant" includes Does 1 through 100, inclusive.

## III.    Jurisdiction and Venue

19.    This Court has both general and specific personal jurisdiction over Defendant as Defendant has affirmatively established and maintained contacts with the State of California.

20.    This Court has personal jurisdiction over this action because Defendant is incorporated and maintains its principal place of business in California and is therefore subject to general jurisdiction in California. This Court further has specific personal jurisdiction arising from Defendant's deceptive business practice of selling gel hand sanitizer Products with illegal and undisclosed amounts of benzene, a carcinogenic chemical impurity, within the State of California. Defendant has sufficient minimum contacts with this State and sufficiently avails itself of the markets of this State through the manufacturing, distribution, advertising, and sale of its Products.

21.    Venue is proper in this Court pursuant to California Civil Code § 1780(d) because Defendant conducts business in the County of San Diego. Defendant's business practices and

Class Action Complaint

EXHIBIT A

wrongful acts have occurred and continue to occur in this county, and the adverse effects of Defendant's alleged wrongful conduct have harmed and will continue to harm the residents of this county and the rest of the State of California.

## IV.    Factual Allegations

**a. No Level of Benzene Is Permitted in Gel Hand Sanitizers**

22.    Benzene is among the 20 most widely used chemicals in the United States.[2] It is a colorless, flammable liquid with a sweet odor that is primarily used as a stating material in making other chemicals, including plastics, lubricants, rubbers, dyes, detergents, drugs, and pesticides.[3]

23.    Numerous studies into the effect of benzene on humans conducted by various national and international health organizations show that benzene is a carcinogen, meaning that it is a substance or agent that causes cancer in humans. For instance, the Department of Health and Human Services states that benzene is known to cause cancer in humans.[4]

24.    Likewise, the World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound, defining it as "carcinogenic to humans."[5]

25.    According to the American Cancer Society, "IRAC classifies benzene as 'carcinogenic to humans,' based on sufficient evidence that benzene causes acute myeloid leukemia (AML). IARC also notes that benzene exposure has been linked with acute lymphocytic leukemia (ALL), chronic lymphocytic leukemia (CLL), multiple myeloma, and non-Hodgkin lymphoma.[6]

26.    Further, California's Proposition 65 Fact Sheet for benzene states, "[b]enzene is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm.

---

[2] *Benzene and Cancer Risk*, AMERICAN CANCER SOCIETY, https://www.cancer.org/cancer/cancer-causes/benzene.html (last accessed Nov. 16, 2021).
[3] *Id.*
[4] CENTERS FOR DISEASE CONTROL AND PREVENTION, FACTS ABOUT BENZENE, https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last accessed Nov. 16, 2021).
[5] *List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, https://monographs.iarc.who.int/list-of-classifications (last accessed Nov. 11, 2021).
[6] *Benzene and Cancer Risk*, AMERICAN CANCER SOCIETY, https://www.cancer.org/cancer/cancer-causes/benzene.html (last accessed Nov. 16, 2021).

Class Action Complaint

EXHIBIT A

Exposure to benzene can cause leukemia. Exposure to benzene during pregnancy may affect development of the child. It may also harm the male reproductive system."[7]

27.    Additionally, the National Institute for Occupational Safety and Health ("NIOSH") "defines benzene as a carcinogen and lists 'inhalation, **skin absorption**, ingestion, **skin and/or eye contact**' as exposure routes. Benzene is specifically associated with blood cancers such as leukemia, making absorption through the skin particularly concerning as there has been multiple FDA studies showing that structurally similar chemicals in sunscreen products found in the blood are at high levels after application to exposed skin."[8]

28.    The Consumer Product Safety Commission (CPSC) considers any product containing 5% or more by weight of benzene to be hazardous, requiring special labeling,[9]

29.    Hand sanitizers are a type of over-the-counter drug regulated by the FDA. The FDA lists Benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[10]

30.    Until early March 2020, the FDA did not allow *any* benzene in hand sanitizer products given its carcinogenic and reproductive toxicity potential. But due to the surge in demand for hand sanitizer products as a result of the COVID-19 pandemic, the supply of hand sanitizer products, the FDA issued a Temporary Policy for Preparation of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency (COVID-19), Guidance for Industry. The policy was issued "to communicate its policy for the temporary preparation of certain alcohol-based hand sanitizer products by firms that register their establishment with FDA as an over-the-counter (OTC) drug manufacturer, re-packager, or re-labeler to prepare alcohol-based hand

---

[7] STATE OF CALIFORNIA, PROPOSITION 65, FACT SHEETS, BENZENE, , https://www.p65warnings.ca.gov/fact-sheets/benzene (last accessed Nov. 16, 2021).

[8] *Valisure Citizen Petition on Hand Sanitizer Products Containing Benzene Contamination and Other Significant Issues*, VALISURE, Mar. 24, 2021, https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Hand-Sanitizer-v4.14.pdf (emphasis added) (hereinafter, the "Citizen Petition").

[9] *Benzene and Cancer Risk*, AMERICAN CANCER SOCIETY, https://www.cancer.org/cancer/cancer-causes/benzene.html (last accessed Nov. 16, 2021).

[10] U.S. DEP'T OF HEALTH AND HUM. SERV. FOOD AND DRUG ADMIN. CTR FOR DRUG EVALUATION AND RESEARCH (CDER), Q3C – TABLES AND LIST: GUIDANCE FOR INDUSTRY, https://www.fda.gov/media/133650/download (updated in Aug. 2018).

Class Action Complaint

EXHIBIT A

sanitizer under the circumstances described in this guidance ('firms') for the duration of the public health emergency[.]"[11] This policy has been updated several times since it was first implemented. The most recent revision occurred on February 10, 2021.

31.    Among the interim limits on ethanol-related impurities established in the FDA policy were limits on benzene, for which the FDA established an interim limit of 2 parts per million ("PPM"). The FDA policy admonished that firms marketing alcohol-based hand sanitizer products "should test the ethanol (or have a third-party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment."[12]

32.    The 2 PPM limit applies to liquid hand sanitizers, <u>not gel or foam products</u>. Therefore, Defendant's Products, a gel product, should not contain *any* benzene, and therefore, its' sale is in violation of FDCA laws and regulations. *See* 21 U.S.C. § 331(a) (prohibiting the sale of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, MDL No. 2875 (RBK-JS), 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021).

33.    The FDA's guidance explicitly states that its temporary policy does <u>not</u> extend to gel or non-liquid hand sanitizer products. [13] Accordingly, as to gel or non-liquid hand sanitizer products, such as Defendant's Products at issue here, there is *no* acceptable level of benzene.

**b. Defendant's Products Contain Illegal Amounts of Undisclosed Benzene**

34.    On March 24, 2021, Valisure LLC, an independent analytical laboratory that is accredited to 2017 International Organization for Standardization ("ISO") 17025 standards for chemical testing and is registered with the FDA and the Drug Enforcement Administration, tested and detected high levels of benzene in 163 brands of gel hand sanitizer. Based on these results,

---

[11] U.S. DEP'T OF HEALTH AND HUM. SERV. FOOD AND DRUG ADMIN. CTR FOR DRUG EVALUATION AND RESEARCH (CDER), TEMPORARY POLICY FOR PREPARATION OF CERTAIN ALCOHOL-BASED HAND SANITIZER PRODUCTS DURING THE PUBLIC HEALTH EMERGENCY (COVID-19), GUIDANCE FOR INDUSTRY, Mar. 2020, at p. 7 n. 37, https://www.fda.gov/media/136289/download (updated Feb. 10, 2021).
[12] *Id.* at p. 11.
[13] *Id.* at p. 7 n. 37.

Class Action Complaint

EXHIBIT A

Valisure submitted a citizen petition to the FDA reporting the results of its testing and requesting that the FDA take action.[14]

35.    Defendant's Products were included within those brands tested by Valisure. Of the 168 hand sanitizer brands that were tested, the highest levels of benzene were found in those manufactured, marketed, and sold by Defendant. Two samples of Defendant's ArtNaturals-branded scent free hand sanitizer Products tested by Valisure contained benzene at 16.1 and 15.2 PPM—approximately eight times the emergency, interim limit established by the FDA (even assuming those limits are applicable).[15] All samples also tested above zero PPM—the level permissible prior to the FDA's emergency, interim policy as well as under state law such as Proposition 65, and the level actually applicable to Defendant's hand sanitizer Products. As benzene was found in all samples of Defendant's Products that were tested, the presence of benzene is pervasive throughout Defendant's Products.

36.    On October 4, 2021, the FDA announced that it had also tested a single lot of Defendant's 8oz bottles of Scent Free Hand Sanitizer from a single manufacturing lot: G20218A. The FDA found the Products contained within this lot had "unacceptable levels of benzene, acetaldehyde, and acetal contaminants." In response, the FDA urged the public "not to use this contaminated product and has added artnaturals hand sanitizer products to the list of hand sanitizers consumers should not use." The FDA further stated that Defendant had failed to respond to multiple FDA attempts to discuss the Products, including identification of the manufacturer, possible recalls, and the scope of the contamination.[16]

37.    On October 28, 2021, the FDA announced Defendant was voluntarily recalling "limited batches of 8 oz bottles of Scent Free Hand Sanitizer."[17] Defendant announced it would be recalling 10 manufacturing lots of 8oz Scent Free Hand Sanitizer."[18] Defendant did not provide

---

[14] *See* Citizen Petition.
[15] *Id.* at p. 14.
[16] U.S. Food & Drug Administration, *FDA Updates on hand sanitizers consumers should not use*, https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-hand-sanitizers-consumers-should-not-use (last accessed Nov. 16, 2021).
[17] *Id.*
[18] *artnaturals Issues Voluntary Recall of Limited Batches of 8oz Bottles of Scent Free Hand Sanitizer Due to Presence of Impurities*, Oct. 27, 2021, https://www.fda.gov/safety/recalls-

Class Action Complaint

EXHIBIT A

any further information as to its methodology behind its recall. To date, no further action has been taken. Upon information and belief, all of Defendant's Products (and not just the single 10 manufacturing lots that were recalled) contain illegal amounts of undisclosed benzene.

38.    Meanwhile, Defendant's website misleadingly still touts that its hand sanitizer Products "are not being recalled."[19]

39.    Because the actual or potential presence of benzene is not disclosed, there is no way for a consumer to tell or to know whether Defendant's Products contain benzene. No reasonable consumer would take the risk that the product they purchase might contain benzene at multiple times the emergency, interim limit established by the FDA, or was illegal to sell or receive.

40.    As a manufacturer, distributor, and seller of an over the counter ("OTC") drug product, Defendant had and has a duty to ensure that its hand sanitizer Products do not contain excessive (or any) levels of benzene, including through regular testing. Based on the testing results set forth above, Defendant made no reasonable effort to test its hand sanitizer Products for benzene or other impurities. Nor did it disclose to Plaintiff or any other consumers in any product advertising, labeling, packaging, or marketing that its hand sanitizer Products contained benzene, let alone at levels that are many multiples of the emergency, interim limit set by the FDA. To the contrary, Defendant represented and warranted, expressly and impliedly, that the Products were of merchantable quality, complied with federal and state law, and did not contain carcinogens, reproductive toxins, or other impurities such as benzene.

41.    As a manufacturer, distributor, and seller of an OTC drug product, Defendant's Products must be both safe and effective and are subject to federal current Good Manufacturing Practices ("cGMP") regulations and the FDCA's state-law analogues, including California's Sherman Law. Federal and state regulatory regimes require that labeling for OTC products identify each active and inactive ingredient.

---

market-withdrawals-safety-alerts/artnaturalsr-issues-voluntary-recall-limited-batches-8oz-bottles-scent-free-hand-sanitizer-due.

[19] *FAQ Hands: Is artnaturals Hand Sanitizer on the recall list?*, artnaturals, https://artnaturals.com/bath-body/hands (last accessed Nov. 16, 2021).

Class Action Complaint

EXHIBIT A

42.    21 C.F.R. § 210.1(a) states that the cGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess." In other words, entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

43.    The FDA's cGMP regulations are found in 21 C.F.R. Parts 210 and 211. These detailed regulations set forth minimum standards regarding organization and personnel (Subpart B); buildings and facilities (Subpart C); equipment (Subpart D); control of components and drug product containers and closures (Subpart E); production and process controls (Subpart F); packaging and label controls (Subpart G); holding and distribution (Subpart H); laboratory controls (Subpart I); records and reports (Subpart J); and returned and salvaged drug products (Subpart K). The FDA has worldwide jurisdiction to enforce these regulations if the facility is making drugs intended to be distributed in the United States.

44.    21 C.F.R. 201.66 establishes labeling requirements for OTC products. It defines an inactive ingredient as "any component other than an active ingredient," and defines an "active ingredient" as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of humans. The term includes those components that may undergo chemical change in the manufacture of the drug product and be present in the drug product in a modified form intended to furnish the specified activity or effect." (Emphasis added).

45.    Any drug product not manufactured in accordance with cGMPs is deemed "adulterated and/or misbranded" or "misbranded" and may not be distributed or sold in the United States. *See* 21 U.S.C. §§ 331(a), 351(a)(2)(B).

46.    FDA regulations require a drug product manufacturer to have "written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess." 21 C.F.R. § 211.100.

Class Action Complaint

EXHIBIT A

47.    A drug product manufacturer's "[l]aboratory controls shall include the establishment of scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers, closures, in-process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality, and purity." 21 C.F.R. § 211.160.

48.    "Laboratory records shall include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays" and a "statement of the results of tests and how the results compare with established standards of identity, strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested." 21 C.F.R. § 211.194.

49.    Upon information and belief, Defendant disregarded the cGMPs outlined above. If Defendant had not routinely disregarded the FDA's cGMPs, or had fulfilled their quality assurance obligations, Defendant would have identified the presence of the benzene contaminant almost immediately. Defendant therefore had actual or constructive notice of the benzene contamination of the Products.

50.    Further, had Defendant adequately tested its hand sanitizer Products for benzene and other carcinogens, reproductive toxins, and impurities, it would have discovered that its Products contained benzene at levels far above the FDA's emergency, interim limit (to the extent even applicable), making those Products ineligible for distribution, marketing, and sale.

51.    Moreover, an OTC drug label that omits or misstates ingredients renders the drug misbranded.[20] The manufacture, sale, or distribution of adulterated or misbranded products is prohibited under the FDCA and also under analogous state laws, including California's Sherman Law, which similarly prohibits the distribution or sale of products that are adulterated, misbranded, or mislabeled. *See* Cal. Health and Safety Code Section 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular").

---

[20] 21 C.F.R. §§ 201.6 and 201.10.

Class Action Complaint

EXHIBIT A

52.     California's Proposition 65 also prohibits the sale of any product containing benzene, a known and enumerated carcinogen and reproductive toxin, without providing a clear and conspicuous warning to consumers of the presence thereof.

53.     As sold, Defendant's Products were both adulterated and misbranded under both federal and California law.

54.     Below is a true and correct copy of the front portion of the Products' label. The label fails to disclose the actual or potential presence of benzene in the Products and is instead misleadingly labeled as "natural" and as having "natural elements."

Class Action Complaint

EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint

EXHIBIT A

55.     Below are true and correct copies of the side portion of the Products' label. The side label states the Products will "naturally" protect consumers from germs and infection and that the Products are "plant-based." Like the front portion of the Products' label, the side portion of the Products' label fails to disclose the actual or potential presence of benzene in the Products and instead misleads the consumer into thinking the Products are all natural.



Class Action Complaint

EXHIBIT A

56.     Below is a true and correct copy of the ingredient list included on the back portion of the Products' label. The ingredient list similarly fails to disclose the actual or potential presence of benzene in the Products:



Class Action Complaint

EXHIBIT A

57.    Under the Sherman Law (Cal. Health and Safety Code §§ 111440 *et seq.*), it is unlawful for any person to misbrand any drug; to manufacture, sell, deliver, hold, or offer for sale any drug that is misbranded; or for any person to receive in commerce any drug that is misbranded or to deliver or proffer for delivery any such drug. It is thus unlawful under California law for Defendant to sell its Products if it contains even low levels of benzene. Defendant is similarly prohibited to sell any drug that is adulterated.

58.    Defendant's Products are misbranded because Defendant does not disclose the actual or potential presence of any benzene, nor does Defendant disclose anywhere else the actual or potential presence of benzene in its Products.

59.    The presence of benzene renders the Products both adulterated and misbranded under the FDCA and the Sherman Law. The Products are adulterated because "it is a drug and the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug meets the requirements of this chapter as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess." 21 U.S.C. § 351(a)(1); Cal. Health & Safety Code § 111260. Specifically, in issuing guidance to the industry, the FDA indicated that "[i]f a firm wishes to use or supply a fuel or technical grade ethanol that does not meet USP or FCC requirements, the firm should test the ethanol (or have a third party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment."[21] Defendant failed to perform this required testing.

60.    The Products are misbranded because its labeling is "false" and "misleading" because it does not disclose the presence of benzene. 21 U.S.C. § 352(a)(1); Cal. Health & Safety Code § 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular.").

_____

[21] U.S. DEP'T OF HEALTH AND HUM. SERV. FOOD AND DRUG ADMIN. CTR FOR DRUG EVALUATION AND RESEARCH (CDER), Q3C – TABLES AND LIST: GUIDANCE FOR INDUSTRY, at 11, https://www.fda.gov/media/133650/download (updated in Aug. 2018).

Class Action Complaint

EXHIBIT A

61.     Under both federal and California law, a product that is "adulterated" or "misbranded" cannot legally be manufactured, advertised, distributed, held, or sold. Adulterated and misbranded products thus have no economic value and are legally worthless. That the Product is both adulterated and misbranded, standing alone, constitutes an "unlawful" business practice and renders Defendant strictly liable to Plaintiff and members of the Class, and public injunctive relief appropriate for the benefit of the general public. Purchasers of adulterated and/or misbranded products such as Defendant's Products are thus entitled to a full refund of their purchase price.

62.     Ironically, Defendant has previously touted its safety record. In December 2020, when other hand sanitizers were being inspected or recalled due to efficacy and safety concerns, Defendant put out the following statement:

> Due to the global demand for sanitizing and personal protective products, hand sanitizer sales have grown at an unprecedented and exponential rate. With this demand, poorly formulated hand sanitizers made their way into the market, causing a massive recall of certain brands of hand sanitizer.
>
> Earlier this year the FDA warned that certain hand sanitizers may not be able to properly clean and sanitize hands, due to insufficient levels of ethyl alcohol and isopropyl alcohol. On top of that, the agency has announced that certain hand sanitizers have tested positive for methanol, a type of alcohol that can be toxic when applied to your hands, and dangerous when ingested.
>
> The FDA released a list of 149 sanitizers that they deemed unsafe to use. **One name you will not find that list is artnaturals! Your safety is our number one priority and we are committed to providing you with top of the line high-quality ingredients to keep you and your family safe.**
>
> …
>
> Always be cautious of what is going into the products that you and your family use everyday, and **know you can trust artnaturals with any and all of your sanitizing needs!**[22]

63.     Plaintiff purchased Defendant's Products from May of 2020 to on or around September of 2020, online from retail stores including but not limited to Target, Wal-Mart and

---

[22] artnaturals, *Hand Sanitizers Recall, and What You Should Know*, Dec. 30, 2020 https://artnaturals.com/uk/blog/hand-sanitizer-recall-and-what-you-should-know.html (emphasis added).

Class Action Complaint

EXHIBIT A

BeallsFlorida approximately three to four times per week. Plaintiff purchased Defendant's Products primarily for personal, family and household use. In the beginning months of the pandemic, when retail store shelves were divulged of all hand sanitizer products, Plaintiff found that Defendant's Products were the only Products left on the market. Plaintiff frequently would purchase the Products not only for herself and her family, but also to gift to her extended family and friends in the hopes of keeping them safe from COVID-19.

64.     Prior to purchasing the Products, Plaintiff reviewed the product label, which contained no disclosure of the actual or potential presence of benzene.

65.     Plaintiff, like each member of the Class, would not have purchased Defendant's Products but for Defendant's concealment of the actual and potential presence of benzene in those Products.

66.     Plaintiff used the Products to sanitize not only her hands, but that of her friends and family, not knowing the Products were contaminated with harmful levels of benzene. Plaintiff (and her family and friends) thus suffered cellular and genetic injury that creates and/or increases the risk that Plaintiff will develop cancer or may suffer personal and bodily injury in the future as a result of such exposure.

67.     Plaintiff's and Class Members' purchases of Defendant's hand sanitizer Products injured or damaged them because adulterated and misbranded products cannot be legally sold, received, possessed, advertised, or delivered; have no economic value; and are legally worthless. Further, by having purchased and used Defendant's hand sanitizer Products Plaintiff and Class <embers were exposed to dangerously high levels of the known carcinogen and reproductive toxin benzene, resulting or potentially suffering personal or bodily injury or that they may suffer personal and bodily injury in the future as a result of such exposure.

68.     Plaintiff and the Class were injured in fact and lost money or property in terms of the full purchase price of the Products. The Products are worthless, as it contains harmful levels of benzene. As the Products expose consumers to benzene well above any permissible limit (which in this case is zero), the Products are not fit for ordinary reasonably foreseeable use by humans.

Class Action Complaint

EXHIBIT A

Defendant's Products were unmerchantable because the Products contained dangerous levels of benzene, and were therefore adulterated, misbranded, and illegal to sell in the United States.

69.    When Plaintiff purchased Defendant's artnaturals-branded hand sanitizer Products, Plaintiff did not know, and had no reason to know, that Defendant's Products were adulterated and misbranded and thus unlawful to sell or purchase as set forth herein. Not only would Plaintiff not have purchased Defendant's Products at all had she known the Products contained benzene, she would not have been capable of purchasing them if Defendant had done as the law required and tested those Products for benzene and other carcinogens, reproductive toxins, and impurities. Moreover, no reasonable consumer would have paid any amount for hand sanitizer products containing any amount of benzene, a known carcinogen and reproductive toxin, much less multiples of the emergency, interim limit set by the FDA (even assuming those allowances apply to Defendant's Products). Thus, if Plaintiff and Class Members had been informed that Defendant's hand sanitizer Products contained or may contain benzene, they would not have purchased or used the products at all, making such omitted facts material to them.

70.    Defendant has sold its hand sanitizer Products directly to consumers through its website throughout the COVID-19 pandemic. Defendant continues to sell its artnaturals-branded hand sanitizer Products on its website even after the results of Valisure's testing and news of Defendant's voluntary recall were made public. Nowhere on Defendant's website is the presence of benzene in its hand sanitizer products disclosed by Defendant.

71.    Defendant's undisclosed inclusion of benzene at levels far exceeding the emergency, interim limit set by the FDA renders its hand sanitizer Products unapproved, misbranded, mislabeled, and/or adulterated under federal and state law.

72.    Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading drug advertisements or statements on products or product packaging, labeling, or any other medium.

73.    Defendant has violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer for sale any drug that is falsely advertised.

Class Action Complaint

EXHIBIT A

74. Defendant has violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise any drug that is adulterated or misbranded, or to deliver or proffer for delivery any such product.

75. Defendant acted unlawfully, unfairly, unethically, and in a misleading manner when it unlawfully sold adulterated and misbranded Products containing undisclosed and unlawful levels of the carcinogen and reproductive toxin benzene. For the reasons set forth above, such transactions are prohibited by law.

76. Given Defendant's ongoing business acts and practices, Plaintiff is unable to rely on Defendant's advertising or labeling in the future, and so will not purchase the Products, although she would if it were sold as advertised, reformulated and made free of benzene and other undisclosed impurities. As a result, Plaintiff has standing to seek injunctive relief. Also, as a person who has suffered injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent business acts and practices, Plaintiff has standing to seek injunctive relief for herself, the Class, and for the benefit of the general public for conduct arising in and emanating from California pursuant to *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 959-60 (2017).

## V.    Class Action Allegations

77. Pursuant to California Code of Civil Procedure § 382 and California Rules of Court, Rule 3.765, Plaintiff seeks class certification of the following Class:

> All California citizens who purchased the Products at retail within California, for personal use and not for resale, on or after November 16, 2018, and until notice is disseminated to the Class ("Class Period"), excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

78. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment to the complaint or narrowed at class certification.

79. <u>Numerosity.</u> The Products are offered for sale online and at stores including major retails like Wal-Mart and Target, throughout the United States. The Class likely numbers in the tens of thousands. Individual joinder of the Class Members in this action would therefore be

Class Action Complaint

EXHIBIT A

impractical. Addressing the claims of each potential Class Member in a class action lawsuit is beneficial to Class Members, the parties, and the courts.

80.    <u>Typicality.</u> Plaintiff's claims are typical of, and are not antagonistic to, the claims of the Class Members. Plaintiff and Class Members all purchased the Products, which were worthless due to the presence of benzene, a harmful and carcinogenic chemical impurity and thus either suffered or potentially suffered physical and bodily injury, or may suffer personal and bodily injury in the future as a result of such exposure, which can only be detected through medical monitoring. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in both economic and actual or potential physical and bodily injury to all members of the Classes, both now and in the future.

81.    <u>Adequacy.</u> Plaintiff is an adequate representative of the Class. Plaintiff's interests do not conflict with the interests of the Class Members, and she has no interest incompatible with that of Class Members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

82.    <u>Superiority.</u> A class action is superior to any other means of adjudication because the damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. If this action is not brought as a class action, then Defendant can continue to deceive consumers and violate federal and state law with impunity.

83.    <u>Commonality and Predominance.</u> There are numerous questions of law and fact common to the Classes, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to:

a.    whether the Products manufactured by Defendant contains dangerously high levels of benzene, thereby breaching the express and implied warranties made by Defendant and making the Products unfit for human use and therefore unfit for its intended purpose;

b.    whether Defendant knew or should have known that the Products contain elevated levels of benzene prior to selling it, thereby constituting fraud;

Class Action Complaint

EXHIBIT A

c.    whether Defendant is liable to Plaintiff and the Classes for unjust enrichment;

d.    whether Defendant is liable to Plaintiff and the Classes for fraud;

e.    whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

f.    whether Plaintiff and the Classes are entitled to declaratory and injunctive relief;

g.    whether Plaintiff and the Classes are entitled to restitution and disgorgement from Defendant;

h.    whether use of the Products resulted in personal or bodily injury, or were likely to have done so based on the levels of benzene contained in the Products, or may suffer personal and bodily injury in the future as a result of such exposure, requiring medical monitoring to determine the impacts of such exposures; and

i.    whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

## VI.    Causes of Action
### First Cause of Action
### Breach of Express Warranty

84.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

85.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

86.    In connection with the sale of the Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Products was a hand sanitizer that contained only those active and inactive ingredients listed on the Products' labels. Those active and inactive ingredients do not include benzene, a known human carcinogen dangerous to humans. Defendant further expressly warranted that the Products are a

Class Action Complaint

EXHIBIT A

hand sanitizer used for cleaning and/or sterilizing hands, rather than adulterated hand sanitizer containing dangerous chemicals.

87.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and the members of the Classes have been injured and harmed because they would not have purchased the Products on the same terms if they knew that the Products contained benzene and is not generally recognized as safe.

## Second Cause of Action

### Breach of Implied Warranty

88.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

89.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

90.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products (i) would not contain elevated levels of benzene and (ii) was generally recognized as safe for human use.

91.    Defendant breached the warranty implied in the contracts for the sale of Products because the Products could not pass without objection in the trade under the contract description, the Products were not of fair or average quality within the description, and the Products were unfit for its intended and ordinary purpose because the Products manufactured, distributed, and sold by Defendant was defective in that it contained elevated levels of carcinogenic and toxic benzene, and as such is not generally recognized as safe for human use. As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

92.    Plaintiff and members of the Classes purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the particular purpose of being used as a safe and effective hand sanitizer product.

93.    The Products were not altered by Plaintiff or members of the Classes.

94.    The Products were defective when it left the exclusive control of Defendant.

Class Action Complaint

EXHIBIT A

95.     Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and members of the Classes.

96.     The Products were defectively manufactured and unfit for its intended purpose, and Plaintiff and members of the Classes did not receive the goods as warranted.

97.     In addition, and as a separate basis to assert a claim for breach of these implied warranties, the presence of a hazardous substance as set forth above constitutes a latent defect in the Products that existed at a time of purchase but was undiscoverable by Plaintiff and Class members at time of sale. If these defects were known the Products would not have been saleable for the reasons set forth above and would not measure up to the descriptions of the Products given by the Defendant.

98.     Plaintiff and Class members purchased the Products from Defendant or its agents, who were in the business of selling these Products to consumers. To the extent any warranties were provided by Defendant to these agents, Plaintiff and Class members were intended third party beneficiaries of such warranties and thus may assert such claims directly against the Defendant.

99.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed in an amount according to proof at time of trial.

### **Third Cause of Action**

**Restitution, Common Counts, Unjust Enrichment, Quasi-Contract and/or Assumpsit**

100.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

102.    Plaintiff and Class members assert a claim for equitable restitution and/or restitutionary damages at law based on the principles of restitution, unjust enrichment, common counts such as monies had and received and mistaken receipt or retention of monies, implying an obligation at law based on principles of quasi-contract and/or the common-law principle of assumpsit, as alleged herein.

Class Action Complaint

EXHIBIT A

103.    Defendant was unjustly enriched at the expense of Plaintiff and Class members as a consequence of Plaintiff and Class members paying monies for Defendant's wholly worthless and illegal hand sanitizer Products.

104.    Defendant must restore to Plaintiff and Class members money that Defendant received as a result of their purchases but that should belong to Plaintiff and Class members, as Defendant knew or had reason to know that its hand sanitizer Products did not conform to their represented characteristics and could not lawfully be sold in and from California, or anywhere in the United States. Those Products were misbranded, mislabeled, and adulterated under the FDCA and the Sherman Law and thus were unlawful to sell.

105.    Plaintiff and Class members conferred a benefit upon Defendant by purchasing the Products at issue. Defendant, having been unjustly conferred a benefit through illegal conduct as set forth above, and having received such benefits using misleading and illegal acts and practices, and omitting material facts as set forth in detail above, is required to make restitution. The circumstances are such that, as between the two, it is unjust for Defendant to retain such a benefit based on the conduct described above. Such money or property belongs in good conscience to Plaintiff and Class members and can be traced to funds or property in Defendant's possession or made as a result thereof. Defendant has received a benefit from Plaintiff and Class members in the form of monies paid by them for the Products at issue and is unjustly retaining that benefit at the expense of Plaintiff and Class members. The unjustified charging and retention of monies from sales of Products that were not lawful and that passed through Defendant entitles Plaintiff and Class members to restitution and disgorgement of such monies.

106.    Defendant entered into a series of implied-at-law obligations that resulted in a sum certain as stated above being had, received, and/or unjustly retained by Defendant, either directly or indirectly, at the expense of Class members. Defendant had knowledge of such benefits. Defendant owes Class members specific sums that can be calculated based on the records of Defendant. Under established principles of quasi-contract and assumpsit under California law, Defendant has an obligation created by law to restore Plaintiff and Class members to their former position by returning the monies paid for the Products it could not lawfully sell and thus is not

EXHIBIT A

lawfully entitled to retain. The specific sum certain to which Plaintiff and Class members are entitled is the purchase price of the Products, plus interest thereon. This obligation is imposed by law, regardless of the intent of the parties. Rather, equity and good conscience dictate that under the circumstances Defendant as the benefitted party should make reimbursement of the monies paid for the Products to Plaintiff and Class members. Such monies were received by Defendant and were not intended to be used for Plaintiff's and Class members' benefit, but rather for its own profit.

107.    Pursuant to California Civil Code § 2224, one who gains or retains a thing (including money) by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, unless they have some other and better right thereto, is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendant from enjoying the fruits of its wrongdoing, Plaintiff and Class members are entitled to the establishment of a constructive trust, in a sum certain, of all monies that have been improperly retained by Defendant, as well as monies made by Defendant on such payments, from which Plaintiff and Class members may seek restitution.

108.    In addition, in light of Defendant's knowledge of the true facts as set forth above, Defendant's conduct warrants an assessment of exemplary damages under this independent cause of action, in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof. Plaintiff also request an order for an accounting and prohibiting Defendant from failing and refusing to immediately cease the wrongful conduct as set forth above and enjoining Defendant from continuing to make the misleading claims at issue herein.

### Fourth Cause of Action

### Fraud and Deceit

109.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

110.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

Class Action Complaint

EXHIBIT A

111.    As discussed above, Defendant provided Plaintiff and members of the Classes with materially false or misleading information about the Products manufactured by Defendant. Specifically, Defendant has marketed the Products as safe for human use. As indicated above, however, these representations are false and misleading as Defendant's Products contained elevated levels of benzene, and carcinogenic and toxic chemical impurity.

112.    Defendant also materially omitted key facts regarding the true nature of the Products, specifically that the Products contained dangerous levels of benzene, was adulterated, and was unsafe for use as a hand sanitizer – facts going directly to the safety of the use of the Products. Had Plaintiff and members of the Classes been apprised of these presumptively material facts, they would have been aware of them and would not have purchased the Products.

113.    The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Classes to purchase defective and falsely labeled Products.

114.    Defendant knew or should have known that its Products were contaminated with this harmful impurity, but continued to manufacture it nonetheless. Pursuant to FDA guidance, Defendant was required to engage in impurity testing to ensure that harmful impurities such as benzene were not present in the Products. Had Defendant undertaken proper testing measures, it would have been aware that the Products contained dangerously high levels of benzene. During this time, Plaintiff and members of the Classes were using the Products without knowing it contained dangerous levels of benzene.

115.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

116.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

**Fifth Cause of Action**

**Intentional Misrepresentation**

Class Action Complaint

EXHIBIT A

117.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

118.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

119.    Defendant willfully, falsely, and knowingly misrepresented that the Products were "natural" and free from toxic impurities such as benzene when, in fact, the Products contain dangerously high amounts of benzene and other impurities.

120.    Defendant's misrepresentations were communicated to Plaintiff and Class Members through the Products' packaging, labeling, and advertising.

121.    At all relevant times, Defendant knew that it had misrepresented the Products as "natural" and as not containing benzene because Defendant was aware that the Products contained benzene, a carcinogenic chemical impurity.

122.    Defendant's misrepresentations were made with the intent that the general public, including Plaintiff and Class Members, would rely on them.

123.    Defendant's misrepresentations were made with knowledge of falsity of such statements or in reckless disregard of the truth thereof.

124.    In actual and reasonable reliance upon the misrepresentations, Plaintiff and Class Members purchased the Products because they were represented as being natural and free from toxic chemicals.

125.    Plaintiff and Class Members were unaware of the true facts concerning Defendant's misrepresentations of the Products, which Defendant suppressed and failed to disclose. Defendant's misrepresentations were material, in that if Plaintiff and Class Members had been made aware that the Products contain benzene, Plaintiff and Class Members would not have purchased the Products.

126.    Plaintiff and Class Members' reliance upon the Defendant's misrepresentations was reasonable. The defect -- the Products contain illegal amounts of undisclosed benzene -- is latent and not something that Plaintiff and the Class Members, in the exercise of reasonable

Class Action Complaint

EXHIBIT A

diligence, could have discovered independently prior to purchase, because it is not feasible for individual consumers to conduct laboratory testing on the Products prior to purchase.

127.    In actual and reasonable reliance upon the misrepresentations, Plaintiff and the Class Members purchased the Products.

128.    Plaintiff and the Class Members suffered a loss of money as result of Defendant's intentional misrepresentations because they would not have purchased the Products if the truth concerning Defendant's misrepresentations had been known. Additionally, Plaintiff and Class Members are likely to have suffered, are suffering, or will suffer personal and bodily injury as a result of exposure to benzene from the Products.

## Sixth Cause of Action

### Negligent Misrepresentation

129.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

130.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

131.    Defendant represented were "natural" and free from toxic impurities such as benzene when, in fact, the Products contain dangerously high amounts of benzene and other impurities. To communicate this representation and persuade Plaintiff and Class Members to purchase the Products, Defendant supplied Plaintiff and Class Members with information, namely the misrepresentations found on the Products' packaging. Defendant knew, or should have known, that this information was false and/or misleading to Plaintiff and the Class Members.

132.    The misrepresentations concerned material facts that influenced Plaintiff and Class Members' purchases of the Products.

133.    Defendant negligently made the misrepresentations with the intent to induce Plaintiff and Class Members to act upon the information by purchasing the Products.

134.    At the time Defendant made those unwarranted and untrue representations, Defendant knew or should have known that the representations were false or made the representations negligently without knowledge of their truth or veracity.

Class Action Complaint

EXHIBIT A

135.    Plaintiff and Class Members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages in the form of lost money from the purchase of the Products. Additionally, Plaintiff and Class Members are likely to have suffered, are suffering, or will suffer personal and bodily injury as a result of exposure to benzene from the Products.

**Seventh Cause of Action**

**Violation of California's Consumers Legal Remedies act, California Civil Code §§ 1750, *et seq.***

136.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

137.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

138.    The Products are "goods" as defined under the California's Consumer Legal Remedies Act ("CLRA"). The CLRA defines "goods" as "tangible chattels brought or leased for use primarily for personal, family, or household purposes[.]" Cal. Civ. Code § 1761(a).

139.    Defendant's false and misleading labeling and other policies, acts, and practices described herein were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and other Class Members, and violated and continue to violate at least the following sections of the CLRA:

§ 1770(a)(5): Representing that goods or services have characteristics , ingredients, uses, benefits, or quantities which they do not have;

§ 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

§ 1770(a)(9): Advertising goods with intent not to sell them as advertised.

140.    Defendant's wrongful business practices regarding the Products, constituted, and constitute, a continuing course of conduct in violation of the CLRA.

Class Action Complaint

EXHIBIT A

141.    Prior to filing this Complaint, on November 12, 2021, a CLRA notice letter was served on Defendant that complied in all respects with California Civil Code § 1782(a). Plaintiff, by and through his counsel, sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.

142.    Plaintiff seeks injunctive relief from Defendant's violation of the CLRA.

143.    If Defendant fails to offer an appropriate replacement, refund, correction or other remedy within 30 days of receipt of Plaintiff's CLRA notice letter, Plaintiff will seek leave to amend his complaint to include a request for damages arising from Defendant's violation of the CLRA.

### **Eighth Cause of Action**

**Violation of California's False Advertising Law, California Business and Professions Code §§ 17500, *et seq.***

144.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

145.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

146.    Under the False Advertising Law ("FAL"), "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its Products misled consumers acting reasonably into believing that the Products do not contain any artificial flavoring. This representation is false and misleading because the Products contains synthetic dl-malic acid, an artificial flavoring.

Class Action Complaint

EXHIBIT A

147.    Plaintiff and Class Members suffered an injury in fact as a result of Defendant's actions as set forth herein because they purchased the Products in reliance of Defendant's false and misleading marketing claims that the Products are "natural" and free from "toxic chemicals."

148.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

149.    Defendant profited from its sales of the falsely and deceptively advertised Products to unwary consumers.

150.    As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and the Class are entitled to injunctive and equitable relief and restitution.

<u>**Ninth Cause of Action**</u>

**Violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.***

151.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

152.    Plaintiff brings this claim individually and on behalf of members of the proposed Class.

153.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

154.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

155.    A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

156.    As set forth herein, Defendant's claims relating to the Products are likely to deceive reasonable consumers and the public.

157.    Defendant has also violated the unlawful prong of the UCL. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following law:

Class Action Complaint

EXHIBIT A

a.    The Food, Drug and Cosmetic Act, as codified at 21 C.F.R. 101.22 *et seq.*

b.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

c.    The Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*

d.    Cal. Health & Safety Code § 109875, *et seq.*

and constitute breach of express and implied warranties.

158.    Defendant has also violated the unfair prong of the UCL. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

159.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions.

160.    Defendant's conduct with respect to labeling, advertising, and sale of the Products was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

161.    Defendant profited from its sale of the unlawfully, deceptively, and falsefully advertised Products to unwary customers.

162.    Plaintiff and Class Members are likely to be damaged by Defendant's deceptive practices, as Defendant continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

163.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and Class Members, who have suffered injury in fact as a result of Defendant's unlawful, unfair, and fraudulent conduct.

164.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, the Class, and the general public, seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

Class Action Complaint

EXHIBIT A

165.    Plaintiff, on behalf of herself and the Class also seeks an order for the restitution of all monies from the sale of the Products that Defendant unjustly acquired through acts of unlawful competition.

## VII.    Prayer of Relief

166.    Plaintiff, on behalf of herself, all others similarly situated in California and the United States, and the general public, prays for judgment against Defendant as follows:

a.    For an order certifying the Classes under California Code of Civil Procedure § 382 and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

b.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and costs incurred in the action.

## VIII.    Demand for Jury Trial

167.    Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

DATED: November 17, 2021          /s/ *Ronald A. Marron*
                                  Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*

37

Class Action Complaint

EXHIBIT A

KAS L. GALLUCCI
*kas@consumersadvocates.com*
MICHAEL T. HOUCHIN
*mike@consumersadvocates.com*
ELISA PINEDA
*elisa@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint

EXHIBIT A